HARRY L. RICE AND FRED B. RICE, TRUSTEES, AVENUE REAL ESTATE TRUST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33211.   Promulgated May 9, 1930.

*John F. Malley, Esq.*, and *John M. O'Donohue, Esq.*, for the petitioners.

*L. A. Luce, Esq.*, for the respondent.

898

OPINION.

ARUNDELL: On December 30, 1920, the Avenue Real Estate Trust, hereinafter referred to as the "Trust," purchased the Hotel Ericson located at Boston, Mass., from the estate of William B. Rice.

The property so purchased was sold in the year 1924 and we are called upon to determine the cost price of the hotel in order that the gain or loss, if any, upon this sale may be fixed. Immediately before December 30, 1920, the date of the purchase, all of the outstanding shares of the capital stock of the "Trust" were owned by the estate of William B. Rice, with the exception of 50 shares which were owned by John D. Hardy, the then trustee in his individual capacity. There were issued in payment for the equity of the Rice estate in the Hotel Ericson 400 shares of capital stock of the "Trust." After the consummation of this transaction the number of shares outstanding was 5,703, all of which were owned by the William B. Rice estate, except the 50 shares held by Hardy.

The shares of stock of the "Trust" were not listed on any exchange. None of them have ever been sold on the market and all were closely held. The petitioners seek to establish the cost of the Hotel Ericson by establishing a value for the 400 shares issued in exchange therefor. No evidence was offered as to the value of the Hotel Ericson itself, but evidence was offered as to the value of the Hotel Puritan and its adjoining property, which constituted the only assets of the "Trust" prior to the purchase of the Hotel Ericson. We have found as a fact that the Hotel Puritan, including its equipment, adjoining vacant land, etc., had a fair market value on December 30, 1920, of about $1,000,000. The petitioner urges that this valuation would give to the shares a value of at least $190 each and that the cost price of the Hotel Ericson should be fixed at $156,000, being the value of 400 shares of stock at $190 per share, plus the amount of the mortgage assumed.

We are not prepared to say that the method used by petitioner in determining the cost of the Hotel Ericson might not in some circumstances be sufficient, but we do not believe that it should be accepted as establishing the cost price of the Hotel Ericson. As heretofore pointed out the estate of William B. Rice owned all the stock of the "Trust," with the exception of 50 shares, and it was the one selling the Hotel Ericson to the "Trust." As stated by counsel for petitioner, the transaction was one "from the right hand to the left hand" and was not an arm's-length transaction. As petitioner's brief puts it, "the transaction was merely one by which the Estate of William B. Rice transferred the property from its direct ownership into the name of a trust of which the same estate owned practically all the capital stock. There was actually no question of valuation involved in this transaction." Under the circumstances in this case it would have mattered little to the estate of William B. Rice whether it received 400 shares of the capital stock of the "Trust," or 4,000 shares, or in fact one share. We have no

doubt that, if only one share had been given for the property, petitioner's counsel would hardly urge their method as in fact determining the cost price of the Hotel Ericson to the "Trust." If the purchaser had agreed to issue 4,000 shares instead of the 400, the price fixed under the petitioner's computation, instead of being $76,000 for the equity in the Hotel Ericson, would have been $760,000. It seems clear, in the circumstances, that the cost to the "Trust" of the Hotel Ericson can not be established without evidence of the value of the Hotel Ericson at the time it was paid in to the "Trust."

At the time of the purchase the "Trust" entered the Hotel Ericson on its books at a value of $120,000. This value was arrived at by taking the capital stock at its par value of $40,000 and adding thereto the mortgage assumed of $80,000. This figure of $120,000 is also the figure accepted and used by respondent as the cost of the property. There are other reasons which suggest themselves as affecting the true value of the stock at $190 per share, such as the small earnings of the corporation, etc., but in the view we take of the matter it is not necessary to discuss these phases of the case because we are satisfied that the evidence offered does not overcome the presumption of correctness attaching to respondent's determination.

*Decision will be entered for the respondent.*